**Brad S. Daniels**, OSB No. 025178
brad.daniels@stoel.com
**Rachel C. Lee**, OSB No. 102944
rachel.lee@stoel.com
**Samantha K. Sondag**, OSB No. 154244
samantha.sondag@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

      Attorneys for Defendant


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| JULIE EASTERBROOK, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>      Defendant. | Case No. 6:22-cv-01108-MC<br><br>DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT<br><br>Oral Argument Requested |

DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

**TABLE OF CONTENTS**

Page

LOCAL RULE 7-1 CERTIFICATION ...................................................................... 1

MOTION ................................................................................................................... 1

MEMORANDUM OF LAW ...................................................................................... 1

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 3

        A.    LinkedIn and LinkedIn Premium ......................................................... 3

        B.    LinkedIn Premium Subscription Process .............................................. 4

        C.    LinkedIn Premium Cancellation Information ........................................ 8

        D.    Plaintiff's Allegations and Claims ........................................................ 9

III.    LEGAL STANDARD .................................................................................... 11

IV.     LINKEDIN'S DISCLOSURES COMPLIED WITH THE ARL ................... 12

        A.    LinkedIn Satisfied the Disclosure Requirements of ORS 646A.295(1) .............. 12

              1.    LinkedIn Clearly and Conspicuously Disclosed the Required Information ........................................ 12

              2.    The Disclosures Were in Visual Proximity to the Request for Consent ........................................ 16

        B.    LinkedIn Obtained Plaintiff's Affirmative Consent ............................. 17

        C.    Plaintiff Fails to Allege a Violation of the ARL Acknowledgment Requirement ........................................ 19

        D.    The Complaint Fails to Plausibly Allege an Ineffective Cancellation Process ........................................ 20

V.      PLAINTIFF'S FOL CLAIM FAILS ............................................................. 22

        A.    LinkedIn Disclosed the Information Required by the FOL .................. 22

        B.    Plaintiff Fails to Plausibly Allege a Cancellation Violation ................ 25

VI.    PLAINTIFF'S CLAIMS ARE TIME-BARRED .................................................. 26

    A.    Relevant Legal Principles ..................................................................... 26

    B.    The Face of the Complaint Demonstrates That Plaintiff's Claims Are
        Time-Barred ............................................................................................ 28

VII.    PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT SHE PURCHASED
       LINKEDIN PREMIUM AS PART OF A CONSUMER TRANSACTION .................... 30

VIII.    CONCLUSION ........................................................................................ 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accident Care Specialists of Portland, Inc. v. Allstate Fire & Cas. Ins. Co.*,
    No. 3:11-CV-01033-MO ........................................................................................31

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................11, 23, 32

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................11, 23

*Brooks v. BC Custom Constr., Inc.*,
    No. 3:18-cv-00717-YY, 2019 WL 3763769 (D. Or. May 21, 2019) ..........................6

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ...........................................................26, 27, 28

*Cervantes v. Countrywide Home Loans, Inc.*,
    No. CV 09-517-PHX-JAT, 2009 WL 3157160 (D. Ariz. Sept. 24, 2009) ..............27

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ...........................................................................18

*Egbukichi v. Wells Fargo Bank, NA*,
    184 F. Supp. 3d 971 (D. Or. 2016) ........................................................................27

*Fowler v. Cooley*,
    239 Or. App. 338, 245 P.3d 155 (2010) .................................................................31

*In re Gilead Scis. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) .........................................................................12, 21

*Gross v. Symantec Corp.*,
    No. C 12-00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012) .....................20

*Hall v. Time, Inc.*,
    No. SACV 19-01153-CJC, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020),
        *aff'd*, 857 F. App'x 385 (9th Cir. 2021) ..................................................15, 17, 18

*Hayes Oyster Co. v. Dep't of Env't Quality*,
    316 Or. App. 186, 504 P.3d 15 (2021) ...................................................................26

*Investigators, Inc. v. Harvey*,
    53 Or. App. 586, 633 P.2d 6 (1981) .......................................................................30

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ................................................................26

*Knight v. U.S. Food & Drug Admin.*,
    No. 3:13-CV-01347-BR, 2013 WL 6530939 (D. Or. Dec. 12, 2013) ....................................11

*Lazy Y Ranch Ltd., v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ................................................................12

*Lundbom v. Schwan's Home Serv., Inc.*,
    No. 3:18-cv-02187-IM, 2020 WL 2736419 (D. Or. May 26, 2020) ................................15, 18

*McCulloch v. Price Waterhouse LLP*,
    157 Or. App. 237, 971 P.2d 4140 (1998) ................................................................26

*Mendoza v. Lithia Motors, Inc.*,
    No. 6:16-CV-01264-AA, 2019 WL 1440260 (D. Or. Mar 30, 2019) ....................................16

*Meyer v. Ameriquest Mortg. Co.*,
    342 F.3d 899 (9th Cir. 2003) ................................................................28

*Meyer v. Mittal*,
    No. 3:21-CV-00621, 2021 WL 5397472 (D. Or. Nov. 16, 2021) ..........................................30

*Morris v. Dental Care Today, P.C.*,
    306 Or. App. 259, 473 P.3d 1137 (2020) ................................................................26, 28

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).....................18

*Orluck v. Illinois Tool Works*,
    No. 3:20-CV-01947-YY, 2021 WL 3473477 (D. Or. Aug. 6, 2021) ....................................32

*Pearson v. Philip Morris, Inc.*,
    358 Or. 88, 361 P.3d 3 (2015) ................................................................11, 26

*Phillips v. Lithia Motors, Inc.*,
    No. 03-3109-HO, 2006 WL 1113608 (D. Or. Apr. 27, 2006) ................................................................27

*Pulse Health LLC v. Akers Biosciences, Inc.*,
    No. 3:16-CV-01919-HZ, 2017 WL 1371272 (D. Or. Apr. 14, 2017) ....................................30

*Rocha v. Bank of Am., NA*,
    No. CV 12-1215-GW(JCx), 2012 WL 1267883 (C.D. Cal. Apr. 12, 2012).........................27,

*Rosales-Martinez v. Palmer*,
    753 F.3d 890 (9th Cir. 2014) ................................................................14

Page iv  -  DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
        MEMORANDUM IN SUPPORT

*Rutter v. Apple Inc.*,
    No. 21-CV-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022)............................15, 20

*Sawyer v. ReconTrust Co.*,
    No. CV-11-292-ST, 2011 WL 2619517 (D. Or. May 27, 2011) .............................................33

*Searle v. Exley Exp., Inc.*,
    278 Or. 535, 564 P.2d 1054 (1977) ....................................................................31, 32, 33

*State v. Gaines*,
    346 Or. 160, 206 P.3d 1042 (2009) ..........................................................................16

*Stoss v. J.P. Morgan Chase Bank, N.A.*,
    No. 3:13-CV-01068-AC, 2014 WL 585946 (D. Or. Feb. 14, 2014) .......................................33

*Walker v. Fred Meyer, Inc.*,
    3:17-CV-01791-YY, 2021 WL 4239988 (D. Or. Aug 13, 2021) ..........................................13

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ...........................................................................23, 32

**Statutes**

Arizona Consumer Fraud Act ...................................................................................27

Oregon's Automatic Renewal Law (ARL) ............................................................. *passim*

Oregon's Free Offer law (FOL) ......................................................................... *passim*

ORS 618.236(2) ...............................................................................................17

ORS 646.295(2) ...............................................................................................11

ORS 646.605(6)(a)......................................................................................3, 30, 32

ORS 646.608(1)(ttt) ......................................................................................11, 12

ORS 646.608(1)(sss) .........................................................................................11

ORS 646.638(6) ...............................................................................................26

ORS 646.644(2) ........................................................................................22, 23, 28

ORS 646.644(2)(a), (b), (d), (e), (f), and (g) ..................................................................11

ORS 646.644(2)(a), (c), (f) ..................................................................................23

ORS 646.644(2)(e)........................................................................................25, 26

ORS 646.644(2)(f) ...........................................................................................24

ORS 646.644(4) ...............................................................................................29

ORS 646.644(5) ..........................................................................................25, 30

ORS 646.644, *et seq* .........................................................................................1

ORS 646A.292 ...................................................................................................1

ORS 646A.293(2) ........................................................................................13, 14

ORS 646A.293(2)(a)-(c) ...................................................................................23

ORS 646A.293(5) .............................................................................................12

ORS 646A.293(5)(a), (c), (d) ...........................................................................13

ORS 646A.293(5)(b) .........................................................................................14

ORS 646A.295 .................................................................................................12

ORS 646A.295(1)(a) ....................................................................10, 12, 13, 16, 28

ORS 646A.295(1)(b) .............................................................................10, 17, 28

ORS 646A.295(1)(c) .............................................................................10, 19, 29

ORS 646A.295(2) .....................................................................19, 20, 21, 29

ORS 646A.710(1)(f) ..........................................................................................16

ORS 646A.735(1)(f) ..........................................................................................16

ORS 759.710(2), (3) ..........................................................................................17

Truth in Lending Act .........................................................................................27

Unlawful Trade Practices Act (UTPA) ...................................................... *passim*

## Other Authorities

California Code, Business and Professions Code § 17602(a)(1) .................................17

Federal Rule of Civil Procedure 8(a) ..............................................................32

Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 11, 14

Mary Jo Foley, ZD Net, *Microsoft is working to fix LinkedIn Premium subscription cancellation problems* (Oct. 14, 2020), https://www.zdnet.com/article/microsoft-is-working-to-fix-linkedin-premium-subscription-cancellation-problems/ ........................................................21

Or. Legislature, H. Gen. Gov't & Consumer Prot. Comm., S.B. 487-A, May 17, 2011 (testimony of Keith S. Dubanevich) ...............................................................17

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a), counsel for Defendant LinkedIn Corporation ("Defendant" or "LinkedIn") conferred with counsel for Plaintiff Julie Easterbrook ("Plaintiff") in good faith, but the parties were unable to resolve the issues raised in this Motion.

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), LinkedIn moves to dismiss Plaintiff's Complaint on the ground that it fails to state a claim upon which relief may be granted.

This Motion is supported by the following Memorandum of Law, LinkedIn's Notice of Incorporation by Reference and Alternative Request for Judicial Notice ("Request for Judicial Notice"), and the Declaration of Suhil Srinivas Vakklaganti in Support of Defendant LinkedIn Corporation's Motion to Dismiss ("Vakklaganti Dec.") and attached exhibits, filed herewith.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

When it passed Oregon's Automatic Renewal Law ("ARL"), the legislature intended "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  ORS 646A.292.  Similarly, Oregon's Free Offer Law ("FOL") requires disclosures to consumers sufficient to inform them that a free offer is being made and its terms. ORS 646.644, *et seq*.  At their core, the ARL and FOL require businesses to disclose certain categories of information to give subscribers basic information when they sign up for an automatically renewing service or accept a free offer.

LinkedIn complied with both the letter and spirit of the ARL and the FOL when it offered automatically renewing memberships to its subscription service, LinkedIn Premium ("LinkedIn Premium" or "Premium").  Before, during, and related to the Premium subscription process, LinkedIn clearly and conspicuously disclosed how much consumers would be charged and when, and that their subscription would be automatically renewed if they did not cancel.  LinkedIn told consumers that they would need to cancel, and when to do so, to avoid further charges; provided subscribers with its cancellation help page and answers to frequently asked questions ("FAQs"); gave them instructions and even a cancellation button; and sent email reminders and acknowledgments.  And for those subscribers who accepted LinkedIn's offer of a free trial period, they were told when their free trial expired and given the same cancellation options.  LinkedIn disclosed all of this information in a manner designed to make it easy for a subscriber to understand, just as the statutes intended.

Relying on conclusory allegations and implausible inferences contradicted by those detailed disclosures, Plaintiff's Complaint seeks to impose hyper-technical requirements that are nowhere to be found in the ARL or FOL.  The Complaint fails to allege any facts that would support a violation of either statute.  And because Plaintiff's two Unlawful Trade Practices Act ("UTPA") claims rely on alleged violations of the ARL and FOL respectively, they fail on the merits.  Accepting only well-pleaded factual allegations as true, and evaluating the incorporated and judicially noticeable disclosures on which Plaintiff relies, the Court should conclude that Plaintiff's Complaint fails to state a claim.

Although those deficiencies alone are sufficient to grant LinkedIn's Motion to Dismiss, Plaintiff's Complaint contains two other fatal flaws.  First, the UTPA's one-year statute of limitations begins to run when a person knew or should have known—on an objective basis—

Page 2    -    DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

that a claim existed.  Here, Plaintiff initially subscribed to LinkedIn Premium in January 2019 and admits that she was aware of the recurring charges and, on that basis, attempted to cancel twice—in January 2021 and again in May 2021.  She then waited over a year before filing this lawsuit.  Thus, the face of the Complaint demonstrates that Plaintiff's claims are untimely.

Second, the UTPA applies only to services "obtained primarily for personal, family, or household purposes."  ORS 646.605(6)(a).  As alleged by Plaintiff, however, individuals and businesses use LinkedIn's professional network for commercial purposes.  Indeed, the names of several of LinkedIn's Premium services (all of which Plaintiff lumps together)—Premium Business, Sales Navigator Professional, Recruiter Lite—on their face are not consumer services.  Plaintiff does not allege otherwise, nor does she even allege that she purchased Premium Career for "personal, household, or family" purposes, as she must to state a UTPA claim.

For each of these independently sufficient reasons, the Court should dismiss Plaintiff's Complaint.

## II.  BACKGROUND

### A.    LinkedIn and LinkedIn Premium

LinkedIn is a business-centered, global online social network of "business professionals" "used for professional networking."  (Compl. ¶¶ 1 & n.1, 10.)  Its mission is to connect the world's professionals and businesses to make them more productive and successful.  LinkedIn offers both free and paid, or Premium, subscriptions.  (*Id.* ¶ 2.)  LinkedIn's Premium subscriptions allow members to access LinkedIn services for a monthly or yearly fee.  (*Id.* ¶ 47.)  LinkedIn Premium subscriptions include Premium Career, Premium Business, Sales Navigator Professional, Recruiter Lite, and LinkedIn Learning.  (*Id.* ¶¶ 1, 2 & n.4.)  Those Premium

subscription services "target small- and medium-sized professional organizations, individual members and business groups in larger enterprises." (*Id.* ¶ 16 n.11.)

LinkedIn members subscribe to its services using LinkedIn's website or mobile application. (*Id.* ¶ 49.) Purchasers of LinkedIn Premium may sign up on a free-trial basis for a month. (*Id.*) At the end of the free-trial month, members may choose to continue the Premium subscription and, if they do so, are charged a monthly or annual fee. (*Id.*)

**B.     LinkedIn Premium Subscription Process**

To subscribe to LinkedIn Premium, customers navigate a standard signup "flow" that takes them through a series of webpages. (*Id.* ¶¶ 48-51.) LinkedIn's signup flow includes a webpage that appears after the customer selects a type of Premium subscription (the "Offer Page"). (*Id.* ¶¶ 48, 50.[1]) On that webpage, immediately below the "Start my free month" button, the Offer Page informs the customer that (1) the free offer will last for one month, (2) the price per month and when it will begin (after the first month), and (3) the ability to "[c]ancel anytime." (Vakklaganti Dec., Ex. A.) Using bold text, the Offer Page also provides answers to FAQs such as: "What happens at the end of my free trial?" and "Can I change or cancel my plan later on?":

---

[1] In describing LinkedIn's signup flow, Plaintiff provides an exemplar from November 11, 2020. (Compl. ¶ 51 n.60.) Plaintiff further alleges that the "Checkout Page shown to consumers has remained substantially and materially unchanged between at least 2019 and the present" and that the exemplar is representative of disclosures shown to Plaintiff. (*Id.*) Without admitting the truth of those allegations, for purposes of this Motion LinkedIn provides webpages from the year before Plaintiff's Complaint was filed and, according to Plaintiff, that are representative of the "substantially and materially unchanged" content shown to subscribers from 2019 to the present.

Page 4    -    DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT

## Frequently asked questions

**What happens at the end of my free trial?**
Your membership will automatically renew at the end of your free month. You can cancel at any time prior to the renewal at linkedin.com/settings.

**Can I change or cancel my plan later on?**
Yes. You can downgrade or cancel anytime from your settings page. When you cancel, you will lose your Premium features at the end of your billing cycle. Be sure you use all your InMail messages before the cancellation goes into effect.

**How will you bill me?**
We offer both monthly and annual billing. Depending on what option you choose, your membership will be renewed at the end of each month or at the end of each year. If you choose to pay annually, you'll save up to 20% compared to paying monthly.

**What is your refund policy?**
LinkedIn does not offer refunds except in certain situations and jurisdictions, as noted in our **refund policy**.

**Can I expense my Premium membership?**
Many employers find LinkedIn Premium so valuable that they'll pay for their employees' memberships. At the end of your purchase, you'll receive the receipt in your email that you can use to file an expense report.

**What should I know about my InMail credits?**
InMail credits expire after 90 days. If you cancel your upgraded account, your credits will remain valid only until the end of your current billing cycle.

(*Id.*)

After customers initiate the subscription process, a webpage allows them to select their billing cycle and payment method (the "Checkout Page"). (*Id.* ¶¶ 50-51; Vakklaganti Dec., Ex. B.) In the "Confirm your billing cycle" portion of the page, the Checkout Page discloses when the free trial begins and ends, and the monthly fee that will be charged at the end of the free trial period. LinkedIn also discloses the cancellation policy by telling members (in at least two locations) "[y]ou can cancel anytime before [a date 30 days from signup] to avoid being charged," and by linking to LinkedIn's cancellation help page. LinkedIn states that it will send an email reminder seven days before the end of the free trial period. And LinkedIn includes a hyperlinked question near the payment method—"Why do we need this for a free trial?"—that, when a customer clicks on or hovers over it, reiterates the disclosures about the cancellation policy:

Page 5    -    DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT



(Vakklaganti Dec., Ex. B.)

After the customer selects a payment method, the Checkout Page includes additional disclosures in the "Review your order" portion of the page.  (Compl. ¶ 51.)  In a box set off above the "Start your free trial" button, those disclosures include bulleted text with some words in bold, including the sentence:  "The plan will automatically renew each month until cancelled."

Also included is a blue box and hyperlinks to LinkedIn's terms of service, cancellation help page, and refund policy:



(Compl. ¶ 51.)

Below the "Start your free trial" button (in a portion of the webpage that Plaintiff obscures in Paragraph 51 of her Complaint), LinkedIn provides answers to FAQs, including when the free trial will begin and end, a description and link telling the customer how to cancel, and a statement of what happens after the free trial period:

## Frequently asked questions

**Will I be charged during my free trial?**

No, you won't be charged during your free trial, which begins on August 26, 2021 and ends on September 26, 2021. You can cancel anytime before September 26, 2021 to avoid being charged.

**How can I cancel during my free trial?**

Once you're signed up, a link to cancel will appear on your Settings page. Learn more about how to cancel on our Help Center.

**What happens after the free trial period?**

If you do not cancel before your free trial period ends on September 26, 2021, you will be automatically charged for your subscription.

(Vakklaganti Dec., Ex. C; *see also id*. Ex. B.)

LinkedIn provides all of that information ***before*** the customer checks out.  By clicking the blue "Start your free trial" button, the customer completes the signup process.  (Compl. ¶ 59 n.65.)  LinkedIn then sends an acknowledgment email to customers.  (*Id.* ¶ 65.)  The acknowledgment email expressly states when the free trial ends and provides the automatic renewal offer terms, including the amount of monthly charge and that the charge will continue until the customer cancels.  (*Id.*)  Immediately after informing members that they will be charged "until you cancel," the words "Learn how" appear as a blue hyperlink and link to LinkedIn's webpage explaining how to cancel a Premium subscription.  (*Id.*; Vakklaganti Dec. ¶ 9 & Ex. D.)

## C.    LinkedIn Premium Cancellation Information

In help pages concerning the cancellation process and FAQs, LinkedIn provides instructions on how to cancel LinkedIn Premium subscriptions.  (Compl. ¶ 56.)[2]  In the LinkedIn Help webpage, "Cancel LinkedIn Premium Subscription," LinkedIn gives step-by-step instructions on how to cancel the Premium subscription.  LinkedIn also includes a direct access button "Cancel Premium" to facilitate the cancellation process (Vakklaganti Dec., Ex. D):

---

[2] Plaintiff both cites and quotes from the LinkedIn Help cancellation pages.  (Compl. ¶ 56 n.62.)



**D.    Plaintiff's Allegations and Claims**

Plaintiff subscribed to LinkedIn Premium Career "in or around January 2019." (Compl.

¶ 75.) Plaintiff alleges that the information provided to her before signing up for LinkedIn

Premium failed to satisfy the ARL and FOL, and LinkedIn failed to obtain her affirmative

consent to the automatic renewal and free offer terms. (*Id.* ¶¶ 76-77.) Plaintiff admits that she

received an email acknowledging her subscription, but she does not attach it to the Complaint, and she claims that the email did not provide her with the necessary information or detail the offer terms, as required by the ARL.  (*Id.* ¶ 78.)

Plaintiff further alleges that she "remained unaware of the unauthorized charges until approximately January or February of 2021."  (*Id.* ¶ 79; *see also id.* ¶¶ 82-83 (admitting to "discovery of charges" in early 2021).)  After becoming aware of LinkedIn's charges, Plaintiff attempted to cancel her subscription in early 2021 and again "in or around May of 2021," but was unsuccessful.  (*Id.* ¶ 87.)  She ultimately was able to cancel her subscription in March or early April 2022.  (*Id.*)  From February 2019 to March 2022, Plaintiff alleges that LinkedIn charged her PayPal account $29.99 per month, resulting in over $1,100 in subscription fees.  (*Id.* ¶ 81.)

On July 29, 2022, Plaintiff filed this putative class action lawsuit, alleging that LinkedIn failed to comply with the ARL in three ways:

> (i) Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement was fulfilled, in violation of ORS 646A.295(1)(a); (ii) Defendant charged Plaintiff's and Class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of ORS 646A.295(1)(b); and (iii) Defendant failed to provide an acknowledgment that included the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of ORS 646A.295(1)(c).

(*Id.* ¶ 53.)

Plaintiff further alleges that LinkedIn "makes it exceedingly difficult and unnecessarily confusing" for consumers to cancel their LinkedIn Premium subscriptions, in violation of ORS 646.295(2)." (*Id*.)

As to the FOL, Plaintiff alleges that LinkedIn's "missing, incomplete, inconspicuous, or otherwise inadequate pre-checkout disclosures" violate ORS 646.644(2)(a), (b), (d), (e), (f), and (g). (*Id*. ¶ 54.)

Based on the alleged violations of the ARL and FOL, Plaintiff asserts two claims based on Oregon's UTPA. (*Id*. ¶ 121 (citing ORS 646.608(1)(ttt)); *id*. ¶ 148 (citing ORS 646.608(1)(sss)); *see also Pearson v. Philip Morris, Inc*., 358 Or. 88, 115, 361 P.3d 3 (2015) (explaining UTPA claims and private enforcement).)

### III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The allegations must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Knight v. U.S. Food & Drug Admin.*, No. 3:13-CV-01347-BR, 2013 WL 6530939, at *2 (D. Or. Dec. 12, 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The factual allegations must present more than "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

In reviewing the sufficiency of the Complaint, the Court must accept as true all factual allegations, but it need not accept the Complaint's "legal conclusions." *Id*. at 678-80.  Courts also do not "accept as true allegations that are merely conclusory, unwarranted deductions of

Page 11   -   DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

In addition to the Complaint itself, a court may also consider documents incorporated by reference into the Complaint and documents subject to judicial notice. (*See* Request for Judicial Notice.) Courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd., v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

## IV. LINKEDIN'S DISCLOSURES COMPLIED WITH THE ARL

### A.    LinkedIn Satisfied the Disclosure Requirements of ORS 646A.295(1)

#### 1.    LinkedIn Clearly and Conspicuously Disclosed the Required Information

Plaintiff's claim that LinkedIn violated ORS 646A.295 and ORS 646.608(1)(ttt) fails as a matter of law. Her allegations, and the documents quoted and referenced in the Complaint (and subject to judicial notice), demonstrate that LinkedIn satisfied all of the ARL's disclosure requirements.

ORS 646A.295(1)(a) requires that an automatic renewal offer "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer." ORS 646A.293(5) defines "[o]ffer terms" to mean:

(a) That the subscription or purchasing agreement will continue until the consumer cancels.

(b) The description of the cancellation policy that applies to the offer.

(c) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal or continuous service plan or arrangement, and, if the amount of the charge will change, the amount to which the charge will change, if known.

Page 12  -    DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT

(d) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

(e) The minimum purchase obligation, if any.

The ARL requires disclosure of those terms to be "clear and conspicuous," which means "in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." ORS 646A.293(2).

LinkedIn complied with the ARL in each of those respects. As it did in the Offer Page, LinkedIn unambiguously discloses in the Checkout Page, in at least two locations, when the free trial begins and ends, the monthly charge, and what happens after the free trial period ends, *i.e.*, that the chosen payment method will be automatically charged for the subscription each month until the plan is canceled. (Vakklaganti Dec., Ex. C; ORS 646A.293(5)(a), (c), (d).) The Checkout Page describes the cancellation policy—stating that the customer can "cancel anytime" and that the subscription "plan will automatically renew each month until cancelled." (Vakklaganti Dec., Ex. C.) And the Checkout Page provides additional information in both answers to FAQs and hyperlinks to LinkedIn's cancellation help pages. (*Id.*) Those disclosures satisfy each one of the requirements of ORS 646A.295(1)(a).

Those disclosures are both clear and conspicuous. *See Walker v. Fred Meyer, Inc.*, 3:17-CV-01791-YY, 2021 WL 4239988, at *2 (D. Or. Aug 13, 2021) (whether disclosure was "clear and conspicuous" can be decided as a matter of law). In an uncluttered format, the Checkout Page presents the information in bulleted and bolded font immediately adjacent to the checkout button. The disclosures are set off from the surrounding text in their own boxes, first in the monthly billing cycle portion and again in the order review section. (Vakklaganti Dec., Ex. B;

Page 13  -    DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Compl. ¶ 51.)  In that way, LinkedIn "clearly calls attention to the language" containing the automatic renewal offer terms.  ORS 646A.293(2).

As to most of the ARL's requirements, Plaintiff offers mere conclusory legal allegations. (*See* Compl. ¶¶ 53, 55.)  She states (and restates repeatedly) that LinkedIn did not present the offer terms clearly and conspicuously, but fails to explain how or why that is the case and identifies no facts or reasonable inferences supporting those statements.  The Court should not accept those allegations as true, particularly when they are contradicted by the very documents on which the Complaint relies.  *See Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014) ("Courts are instructed, in deciding Rule 12(b)(6) motions, to read the allegations of a complaint in the context of the full documents which the allegations purport to summarize and, where appropriate, to accept the documents, rather that a characterization of the documents, as the true account.").

To the extent Plaintiff alleges specific deficiencies in LinkedIn's disclosures, her arguments cannot be squared with the statutory text.  Plaintiff criticizes the description of LinkedIn's cancellation policy, claiming that the ARL requires LinkedIn to "present its full cancellation policy directly on the Checkout Page" and in a specific location.  (Compl. ¶ 56.) The text of the ARL, however, does not require that level of detail or the use of any "magic words."  ORS 646A.293(5)(b) only requires a "**description** of the cancellation **policy**," not a full repetition of the cancellation process or every nuance of the cancellation mechanism.  (Emphasis added.)

LinkedIn satisfied that requirement in multiple ways.  First, LinkedIn informed Premium members that they could "cancel anytime" and specified the deadline by which subscribers would need to do so to avoid charges for the next month.  Second, LinkedIn invited members to

"[l]earn about how to cancel" immediately above the checkout button, which appeared in hyperlinked blue text leading to the cancellation help page.  Third, immediately below the checkout button, LinkedIn provided both answers to FAQs about cancellation on the Checkout Page and links to the LinkedIn Help pages describing the cancellation process and deadlines.  By providing both textual descriptions and links during the subscription process, LinkedIn sufficiently described its cancellation policy as required.  *See Rutter v. Apple Inc*., No. 21-CV-04077-HSG, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022) (holding that Apple included a "description of the cancellation policy that applies to the offer" by linking to its Terms and Conditions (citation omitted)); *Hall v. Time, Inc*., No. SACV 19-01153-CJC, 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020) (holding that a checkout notice sufficiently described Time's cancellation policy when it "provided information about how and when she could cancel, with hyperlinks to the relevant contact information"), *aff'd*, 857 F. App'x 385 (9th Cir. 2021); *Lundbom v. Schwan's Home Serv., Inc*., No. 3:18-cv-02187-IM, 2020 WL 2736419, at *6 (D. Or. May 26, 2020) (holding that policies available via hyperlink are incorporated into the parties' agreement where a plaintiff agrees to them by clicking a "Complete Registration" button).  Plaintiff's contrary argument distorts the statutory text and would require a confusing clutter of information.

Plaintiff also argues that the length of the automatic renewal term is not adequately disclosed.  (Compl. ¶ 58.)  The Checkout Page contradicts that assertion, because it clearly states in bold font when the free trial begins and ends, that the subscription plan "will automatically renew each month until cancelled," and that the subscriber's payment method will be charged a specific amount "each month."  (Compl. ¶ 51 & n.60.)  Nothing more—including whether a "month" referred to a specific number of days—was necessary to inform the consumer or to

accomplish the purpose of the ARL. *See Mendoza v. Lithia Motors, Inc.*, No. 6:16-CV-01264-AA, 2019 WL 1440260, at *5 (D. Or. Mar 30, 2019) ("[S]trict recitation of the statute is not required to meet the clear and conspicuous standard.").

### 2.     The Disclosures Were in Visual Proximity to the Request for Consent

The ARL also requires that the "automatic renewal offer terms" be "in visual proximity . . . to the request for consent to the offer." ORS 646A.295(1)(a). The legislature did not specifically define the phrase "visual proximity," so the Court must assume that the legislature intended to give those terms their plain, natural, and ordinary meaning. *State v. Gaines*, 346 Or. 160, 175, 206 P.3d 1042 (2009).

Here, the request for consent is the "Start your free trial" button on the Checkout Page (Compl. ¶¶ 51, 59), and the offer terms are visually proximate to that button. The disclosures are not buried in fine print, distant locations, or otherwise difficult to see in relation to the request for consent. On the same uncluttered page above and below—and visually proximate to—the button is all the information that a subscriber would need to understand and consent to an automatically renewing monthly charge.

Plaintiff argues that, in order to satisfy the visual proximity requirement, the disclosures must appear "immediately above" the checkout button. (*Id.* ¶ 59 n.64.) Nothing in the ARL imposes that invented requirement, and it is inconsistent with the statutory text and context. Had the legislature intended to require that ARL disclosures be in a specific location, or be in "immediate proximity," "adjacent," or "immediately adjacent" to the checkout button, it knew how to do so, as Oregon law requires such disclosures in other contexts. *See, e.g.*, ORS 646A.735(1)(f) (requiring a disclosure in "immediate proximity" to the signature in equity conveyancing); ORS 646A.710(1)(f) (requiring disclosure in "immediate proximity" to signature

Page 16   -   DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
                  MEMORANDUM IN SUPPORT

in foreclosure consulting agreements); ORS 759.710(2), (3) (in advertisement of pay-per-call services, requiring disclosure of cost of call "adjacent to the advertised number each time the number appears in the advertisement"); ORS 618.236(2) (in advertisement of cost for commodity sold by weight or measure, where price includes a fraction of a cent, requiring elements of fraction to be displayed "immediately adjacent to" the numerals indicating the whole cents).

Attempts to impose similar additional proximity requirements have already been rejected. In *Hall v. Time*, the plaintiff alleged that a magazine subscription offer was not compliant with California's ARL because disclosures were separated from the order button by a promotion for another magazine.[3] The district court dismissed the complaint, and the Ninth Circuit affirmed, holding that the statute required "visual proximity," not immediate adjacency, between the "automatic renewal offer terms" and "the request for consent." *Hall*, 857 F. App'x at 385-86 (quoting Cal. Bus. & Prof. Code § 17602(a)(1)). The Court should reach the same result here.

## B.    LinkedIn Obtained Plaintiff's Affirmative Consent

The ARL requires businesses to obtain a customer's "affirmative consent to the agreement containing the automatic renewal offer terms" before charging the consumer. ORS 646A.295(1)(b). LinkedIn satisfies the consent requirement, as the Checkout Page demonstrates. Throughout the Checkout Page, and immediately above the "Start your free trial" button, LinkedIn discloses the terms of offer, including that the plan will automatically renew and cancellation is required to avoid monthly charges. LinkedIn also includes a hyperlink to its

---

[3] According to the Chief of Staff and Special Counsel in the Oregon Department of Justice, Oregon's ARL arose out of several 2009 work sessions and "[i]n great measure it is based on California law, if not almost exactly California law." Or. Legislature, H. Gen. Gov't & Consumer Prot. Comm., S.B. 487-A, May 17, 2011 (testimony of Keith S. Dubanevich).

Page 17   -   DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

terms of service, cancellation policy and process, and refund policy.  (Vakklaganti Dec. Exs. B-C; Compl. ¶ 51.)  Contrary to Plaintiff's argument that a separate clickbox or checkbox is necessary (Compl. ¶ 63), the ARL does not require more.

Again, Plaintiff's exact argument has been rejected by a court interpreting California's ARL, the statute on which the legislature based the Oregon ARL.  In *Hall*, the automatic renewal offer terms were provided on two pages.  In order to accept the offer, the plaintiff had to access both pages and then click a "submit order" button.  The plaintiff argued that this did not satisfy the ARL because she did not have to click a box or button saying "agree" or similar terms.  The court rejected the plaintiff's argument, explaining that the "Plaintiff affirmatively consented to the agreement containing those terms by entering her payment information and submitting her order after receiving notice of those terms."  *Hall*, 2020 WL 2303088, at *4.

Courts have upheld online agreements where users "affirmatively acknowledge" the agreement (as here, by clicking a signup button) and the website contained "explicit textual notice" that doing so would "act as a manifestation of the user's intent to be bound."  *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (citation omitted).  Indeed, courts conclude that consumers consent to terms notwithstanding the fact that the terms may be accessible via a hyperlink to a separate page.  In *Lundbom*, 2020 WL 2736419, at *4, for example, the court explained "hybrid internet agreements" or "hybridwrap" or "sign-in wrap" agreements, "'prompt the user to manifest assent to particular terms by engaging in some dual-purpose action, such as creating an account' or making a purchase."  (Citation omitted.)  In those circumstances, "[t]he terms in hybrid agreements will be given effect if an offeree has inquiry notice of the terms and assents to the terms through conduct, such as creating an account, that a reasonable person would understand to constitute consent."  *Id.*; *see also Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d

254, 266 (E.D.N.Y. 2019) ("Courts will give effect to hybridwrap terms where the button required to perform the action manifesting assent (*e.g.*, signing up for an account or executing a purchase) is located directly next to a hyperlink to the terms and a notice informing the user that, by clicking the button, the user is agreeing to those terms."), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

**C.    Plaintiff Fails to Allege a Violation of the ARL Acknowledgment Requirement**

The ARL requires businesses

> to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services.

ORS 646A.295(1)(c).

Acceptable cancellation methods for services that directly bill their customers include "a toll-free telephone number, electronic mail address, a post-office address only when the person directly bills the consumer, ***or*** another cost-effective, timely and easy-to-use mechanism for cancellation." ORS 646A.295(2) (emphasis added).

Plaintiff's acknowledgment allegations are deficient in at least two ways. First, although Plaintiff alleges that LinkedIn sent an acknowledgment email to her, she includes no allegations about what that email contained or did not contain. She cites an acknowledgment email from March 2021 "[b]y way of example" (Compl. ¶ 65), but includes no additional allegations as to whether she received a similar email or whether the example she provides is representative of, or is materially similar to, the email that she received. To meet the minimum plausibility threshold, Plaintiff must allege facts sufficient to identify what acknowledgment she received (and how it

Page 19  -  DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
                    MEMORANDUM IN SUPPORT

was deficient).  *See Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *5

(N.D. Cal. July 31, 2012) (dismissing fraud claims that lacked "direct quotations from

[defendant's] website or other marketing materials" because plaintiff's claims were entirely

dependent on the nature of the defendant's representations).  Plaintiff's allegations fail that

fundamental requirement.

Second, even based on the example and the other allegations in the Complaint, there was

no violation of the ARL's acknowledgment requirement.  The acknowledgment email not only

referred to the essential offer terms—that the member would pay a specific monthly charge until

she canceled—but also included a "Learn how" hyperlink to the cancellation help page, which

provided Plaintiff with additional information, including terms of LinkedIn's cancellation policy

and a description of the cancellation process.  *See Rutter*, 2022 WL 1443336, at *7 (dismissing

claim based on the defendant's alleged failure to send an acknowledgment email because

relevant information was contained in its terms of service).  Plaintiff does not plausibly allege

otherwise.

**D.      The Complaint Fails to Plausibly Allege an Ineffective Cancellation Process**

Plaintiff alleges that LinkedIn did not provide a timely, easy-to-use cancellation

mechanism for LinkedIn Premium subscriptions, in violation of ORS 646A.295(2).  (Compl.

¶ 68.)  But Plaintiff's "cancellation difficulty" allegations are implausible and conclusory, and do

not state a claim, for at least two reasons.

First, Plaintiff's allegations rely on characterizations and hyperbolic descriptions that are

contradicted by the documents referenced in the Complaint.  Although Plaintiff alleges that she

attempted to cancel her subscription twice before successfully doing so in March 2022, she fails

to plausibly allege facts indicating that LinkedIn's cancellation mechanism was not timely or

"easy-to-use."  In fact, as the cancellation help page details, LinkedIn not only provided

subscribers with step-by-step instructions on how to cancel Premium subscriptions, but also

included a button prominently labeled "Cancel Premium" that permitted direct access to the

Premium cancellation page.  (Vakklaganti Dec., Ex. D.)  Courts do not accept as true allegations

that "are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re*

*Gilead*, 536 F.3d at 1055 (citation omitted).  Plaintiff's allegations with respect to LinkedIn's

cancellation process fall precisely within that description and, on that basis, she has failed to

plead a violation of ORS 646A.295(2).

Plaintiff cites a single instance of a reported "glitch" in the cancellation process in

October 2020.  (Compl. ¶ 68.)  But she does not allege that this event has any temporal or other

relationship to her attempts to cancel, which occurred *months* later.  (*Id.* ¶¶ 26, 68.)

Furthermore, as the articles cited by Plaintiff confirm, the issue in October 2020 was a "bug" in

the Settings and Privacy page.  *See* Mary Jo Foley, ZD Net, *Microsoft is working to fix LinkedIn*

*Premium subscription cancellation problems* (Oct. 14, 2020),

https://www.zdnet.com/article/microsoft-is-working-to-fix-linkedin-premium-subscription-

cancellation-problems/; *see also* Compl. ¶ 68 n.66.  Plaintiff fails to plead plausibly—or at all—

that the alleged "bug" was not fixed after October 2020, that it continued for months, that it

affected her ability to cancel, or that it created a confusing or ineffective cancellation process in

2021 or 2022.  In fact, as the title of the article indicates, Microsoft was working to correct the

problem, and Plaintiff fails to allege that it was not corrected by the time she attempted to cancel

in early 2021.[4]

---

[4] The Complaint also recites a variety of consumer complaints from the Better Business Bureau
website that mention LinkedIn from June 2020 to July 2022.  (Compl. ¶ 25.)  As a professional

## V.  PLAINTIFF'S FOL CLAIM FAILS

**A.    LinkedIn Disclosed the Information Required by the FOL**

Oregon's FOL disclosure obligations largely track the ARL disclosure requirements.

ORS 646.644(2) provides:

> A person may not make a free offer to a consumer, or impose a financial obligation on the consumer as a result of the consumer's acceptance of a free offer, unless the person provides the consumer with clear and conspicuous information regarding the terms of the free offer before the consumer agrees to accept the free offer[.]

The required information includes:

> (a) Identification of all goods or services, or enrollments in a membership, subscription or service contract, that the consumer will receive or incur a financial obligation for as a result of accepting the free offer;

> (b) The cost to the consumer of any financial obligation the consumer will incur if the consumer accepts the free offer, including any fees or charges;

> . . . . .

> (d) A statement, if applicable, that by accepting the free offer, the consumer will become obligated for additional goods or services, or enrollment in a membership, subscription or service contract, unless the consumer takes affirmative action to cancel the free offer or otherwise reject receipt of the additional goods or services or the enrollment in a membership, subscription or service contract;

> (e) Except as provided in paragraph (h) of this subsection, the consumer's right to cancel the free offer using procedures specifically identified for that purpose that, at a minimum, enable the consumer to cancel by calling a toll-free telephone number or

---

network with "more than 188 million members in the United States" (*id.* ¶ 2), it is not surprising that LinkedIn might be the subject of complaints about its services.  Several unverified, anonymous hearsay complaints filed online over the course of two years, however, do not make Plaintiff's claims any more plausible, or affect the adequacy of the disclosures that were provided.

Page 22  -  DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

to cancel in a manner substantially similar to that by which the consumer accepted the free offer;

> (f) The time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer; [and]

> (g) If applicable, the consumer's right to receive a credit on goods or services received as a result of accepting the free offer when the goods or services are returned or rejected, and the time period during which the goods or services must be returned or rejected for the purpose of receiving a credit[.]

ORS 646.644(2).

Plaintiff's FOL disclosure claim fails for the same reasons as her ARL claim. For example, both the ARL and the FOL require clear and conspicuous disclosure of the charges that the customer will incur, the right to cancel, and the relevant time periods. *Compare* ORS 646A.293(2)(a)-(c) *with* ORS 646.644(2)(a), (c), (f). Just as it complied with the ARL, LinkedIn complied with those FOL requirements. As illustrated above, the Checkout Page and hyperlinked disclosures provided Plaintiff with all the information necessary to understand and assess the free offer terms.

Relying on her same ARL allegations of deficient disclosures, Plaintiff repeats only conclusory allegations that LinkedIn did not disclose the required information with citations to or quotations of the FOL. (Compl. ¶¶ 57, 60-61; *see also id.* ¶ 72.) Parroting the statutory text is not enough to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not state a claim for relief); *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("legal conclusions premised upon descriptions of parallel conduct" and the "formulaic recitation of the elements of a cause of action will not do" to save a complaint from dismissal (quoting *Twombly*, 550 U.S. at 555)).

Page 23   -   DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

To the extent the FOL imposes different, or additional, requirements, LinkedIn satisfied them.  ORS 646.644(2)(f), for example, requires the offeror to disclose the "time period during which the consumer must cancel in order to avoid incurring a financial obligation as a result of accepting the free offer."  LinkedIn made that required disclosure.  The Checkout Page expressly describes when the free trial begins and ends, and the date before which the customer must cancel before incurring a monthly charge:





(Vakklaganti Dec., Ex. B; Compl. ¶ 51.)

**B.      Plaintiff Fails to Plausibly Allege a Cancellation Violation**

The FOL requires disclosures of cancellation procedures, ORS 646.644(2)(e), and the

offeror "may not fail or refuse to cancel the free offer if the consumer has used, or made

reasonable efforts to attempt to use" an accepted cancellation procedure.  ORS 646.644(5).

Citing her "experiences attempting to cancel," Plaintiff alleges that LinkedIn violated those

sections.  (Compl. ¶¶ 69, 87-89.)

Those allegations are implausible for the reasons outlined above.  As to the disclosures

related to cancellation and the cancellation process, LinkedIn provided all the necessary

information and then some, including both step-by-step instructions and a link to the cancellation

help page.  (Vakklaganti Dec., Ex. D.)  LinkedIn also included FAQs and answers—both on the

Checkout Page and in a separate page—detailing the cancellation process and policy.  (*Id.*,

Exs. A, C.)

As to the cancellation process itself, Plaintiff does not plead a violation of

ORS 646.644(2)(e).  Under that subsection, an offeror must provide procedures that "enable the

consumer to cancel by calling a toll-free telephone number *or* to cancel in a manner substantially

similar to that by which the consumer accepted the free offer."  As the Checkout Page and

cancellation help page demonstrate (Vakklaganti Dec., Exs. B-D), LinkedIn offers a cancellation

process that is "substantially similar" to the signup process—a few clicks through a couple of

webpages.  And although Plaintiff states that she "struggled" to cancel her subscription and

describes her feelings of "defeat[]" (Compl. ¶ 89), she offers no specifics, no facts, and no

allegations that would suggest that ***LinkedIn*** failed or refused to cancel her subscription, which

is what a FOL claim actually requires.

# VI.  PLAINTIFF'S CLAIMS ARE TIME-BARRED

A court "may dismiss a claim 'if the running of the statute [of limitations] is apparent on the face of the complaint.'"  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (brackets omitted) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)).  Here, Plaintiff's own allegations show that her claims are time-barred.

## A.    Relevant Legal Principles

ORS 646.638(6) provides that civil UTPA actions by private parties "must be commenced within one year after the discovery of the unlawful method, act or practice."  "The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct."  *Morris v. Dental Care Today, P.C.*, 306 Or. App. 259, 261, 473 P.3d 1137 (2020) (affirming dismissal of UTPA claim against dentist for providing substandard dentures); *see also Pearson v. Philip Morris, Inc.*, 358 Or. 88, 137, 361 P.3d 3 (2015) (statute of limitations on UTPA claim for false representation runs from when plaintiffs "either actually knew or should have known that the representation . . . was not true").  It is an objective standard.  *Hayes Oyster Co. v. Dep't of Env't Quality*, 316 Or. App. 186, 199, 504 P.3d 15 (2021) ("a reasonable person of ordinary prudence" (citation omitted)).

Courts use "a two-step process to determine whether a plaintiff 'should have known' of the existence of a claim: 'First, it must appear that plaintiff had sufficient knowledge to excite attention and put a party upon his guard or call for an inquiry.  Second[,] if plaintiff had such knowledge, it must also appear that a reasonably diligent inquiry would disclose the fraud.'"  *Brooks v. BC Custom Constr., Inc.*, No. 3:18-cv-00717-YY, 2019 WL 3763769, at *19 (D. Or. May 21, 2019) (quoting *McCulloch v. Price Waterhouse LLP*, 157 Or. App. 237, 248, 971 P.2d 4140 (1998)).  Where the purported fraud occurred more than a year prior to the filing of a

complaint, a UTPA plaintiff must specifically "allege facts sufficient to support application of the discovery rule." *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 977-78 (D. Or. 2016) (dismissing UTPA claim as time-barred where plaintiff failed to plead "that they reasonably could not have known about the allegedly improper fees and costs" until after the statute of limitations expired); *see also Phillips v. Lithia Motors, Inc*., No. 03-3109-HO, 2006 WL 1113608, at *15 (D. Or. Apr. 27, 2006) ("A complaint filed after the period provided by statute for the bringing of the action must negative lack of diligence in the discovery of the fraud.").

Applying those concepts, the Ninth Circuit holds that, when a plaintiff's claim involves an alleged failure to make statutorily required disclosures for a transaction, discovery occurs at the time of the transaction, because at that point the consumer knows or should know what was disclosed. *See Cervantes*, 656 F.3d at 1045 (holding that limitations periods on claims under federal Truth in Lending Act ("TiLA") and Arizona Consumer Fraud Act "began to run when the plaintiffs executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time");[5] *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (where plaintiffs alleged failure to accurately disclose expiration date of right to cancel, "[t]he failure to make the required disclosures occurred, if at all, at the time the loan documents were signed.  The Meyers were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed."); *see also Rocha v. Bank of Am., NA*, No. CV 12-1215-GW(JCx), 2012 WL

---

[5] In *Cervantes*, the plaintiffs alleged, *inter alia*, that a borrower "was not provided with a final calculation of the interest rate, finance charges, or the annual percentage rates on the final amount of his mortgage." *Cervantes v. Countrywide Home Loans, Inc.*, No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *3 (D. Ariz. Sept. 24, 2009).

1267883, at *2 (C.D. Cal. Apr. 12, 2012) ("Plaintiff has alleged that Defendants did not make

certain disclosures . . ., loaned money to her without regard for her ability to pay, and included

'certain unspecified terms' in her loan.  None of these actions are ones that Plaintiff could not

have realized at, or very soon after, the time when she obtained her loan/refinance." (brackets

omitted)).

**B.     The Face of the Complaint Demonstrates That Plaintiff's Claims Are Time-Barred**

      Here, the nature of the alleged UTPA violations establishes that Plaintiff knew or should

have known of LinkedIn's allegedly unlawful conduct at the time that it occurred, which Plaintiff

admits was more than one year prior to the filing of the Complaint.

      First, Plaintiff alleges that LinkedIn violated the ARL and FOL by failing to provide the

required information clearly and conspicuously and in the proper proximity before she accepted

the free offer and subscription agreement, in violation of ORS 646A.295(1)(a) and

ORS 646.644(2).  (Compl. ¶¶ 122(a), 143.)  But she admits that she subscribed to Premium

Career "in or around January 2019."  (*Id.* ¶ 75.)  The alleged failure to disclose *before* she signed

up for the subscription necessarily must have occurred then too.  Thus, in January 2019, Plaintiff

knew or should have known what information had—or had not—been disclosed to her and in

what manner, so she was "in full possession of all information relevant to the discovery of" the

alleged violations.  *Meyer*, 342 F.3d at 902; *see also Cervantes*, 656 F.3d at 1045; *Rocha*, 2012

WL 1267883, at *2.  Thus, she "kn[ew] or should have known of the allegedly unlawful

conduct" in January 2019, and the statute of limitations began to run.  *Morris*, 306 Or. App. at

261.

      Second, Plaintiff alleges that LinkedIn violated the ARL and FOL by failing to obtain

affirmative consent before charging her, in violation of ORS 646A.295(1)(b) and

ORS 646.644(4).  (Compl. ¶¶ 122(b), 144.)  She necessarily would have known in January 2019 that she had not affirmatively consented.  (*Id.* ¶ 75.)  And a reasonable person would have known of each monthly charge shortly after it occurred—but in any event, Plaintiff admits that she knew of the "unauthorized charges" in "approximately January or February of 2021."  (*Id.* ¶ 79; *see also id.* ¶ 83.)  She also admits that she then knew or should have known of each subsequent month's charge.  (*Id.* ¶ 86 (in "approximately January or February of 2021," learning that she had been charged every month "g[ave] her reason to believe those fees would continue thereafter on a monthly basis").)  Thus, after early 2021 (and more than a year before filing the Complaint), Plaintiff "kn[ew] or should have known of the allegedly unlawful conduct" each month when the charge occurred.  *Morris*, 306 Or. App. at 261.

Third, Plaintiff alleges that LinkedIn violated the ARL by "fail[ing to] . . . provide an acknowledgement" including the mandatory information, in violation of ORS 646A.295(1)(c).  (Compl. ¶ 122(c).)  But again, Plaintiff knew or should have known what information had—or had not—been disclosed in the acknowledgment when she received it in January 2019—more than three years ago.  (*Id*. ¶¶ 75, 78.)

Fourth, Plaintiff alleges that LinkedIn violated the ARL by making it "difficult and unnecessarily confusing" for her to cancel, which supposedly violates ORS 646A.295(2).  (*Id*. ¶ 122.)  But she admits that she wanted to cancel "in or around January or February of 2021" and "in or around May of 2021," but "struggled" with "Defendant's obscure, confusing, and time-consuming cancellation policy."  (*Id*. ¶¶ 87, 89.)  As a result, Plaintiff knew or should have known by May of 2021, at the latest, of the allegedly unlawful conduct of making it difficult and unnecessarily confusing to cancel.

Fifth, Plaintiff alleges that LinkedIn violated the FOL by failing or refusing to cancel the free offer when she made reasonable efforts to attempt to use the specified cancellation method, in violation of ORS 646.644(5).  (*Id*. ¶ 147.)  Because Plaintiff alleges that she "attempted" to cancel twice—in January or February 2021 and in May 2021—she knew or should have known at those times that LinkedIn did not cancel her subscription.[6]  (*Id.* ¶¶ 87, 89.)

In sum, Plaintiff's own allegations show that she knew or should have known before July 29, 2021, of the allegedly unlawful conduct that she now contends violated the ARL and the FOL.  On that independent basis, the Complaint fails to state a claim upon which relief may be granted.

## VII.  PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT SHE PURCHASED LINKEDIN PREMIUM AS PART OF A CONSUMER TRANSACTION

The UTPA "applies only to consumer transactions; it does not regulate commercial transactions." *Investigators, Inc. v. Harvey*, 53 Or. App. 586, 590, 633 P.2d 6 (1981); *Pulse Health LLC v. Akers Biosciences, Inc.*, No. 3:16-CV-01919-HZ, 2017 WL 1371272, at *8 (D. Or. Apr. 14, 2017) ("[T]he UTPA is limited to consumer actions . . . ." (collecting cases)); *Meyer v. Mittal*, No. 3:21-CV-00621, 2021 WL 5397472, at *5 (D. Or. Nov. 16, 2021) (same); ORS 646.605(6)(a) (defining phrase "[r]eal estate, goods or services" as "those that are or may be obtained primarily for personal, family or household purposes").  Because Plaintiff has not adequately pleaded that subscriptions to LinkedIn "Premium Career, Premium Business, Sales Navigator Professional, Recruiter Lite, and LinkedIn Learning"—which Plaintiff defines

---

[6] Plaintiff's third effort to cancel her subscription, in March 2022, was successful.  (Compl. ¶ 87.)  In other words, LinkedIn did not fail or refuse to cancel her subscription that time, and she has no claim for violation of ORS 646.644(5) in March 2022.

collectively as "LP Subscriptions" or "LinkedIn Premium" (Compl. ¶¶ 1, 2)—are consumer

transactions, Plaintiff's UTPA claims fail as a matter of law.

To determine whether a transaction at issue is a 'consumer transaction, courts consider

whether it was (1) "for goods or services 'customarily purchased by a substantial number of

people for personal, family, or household use'" and (2) "actually entered into by the plaintiff 'for

personal, family, or household use, rather than for commercial use or resale.'" *Accident Care

Specialists of Portland, Inc. v. Allstate Fire & Cas. Ins. Co.*, No. 3:11-CV-01033-MO et al.,

2014 WL 2747632, at *5 (D. Or. June 16, 2014) (quoting *Fowler v. Cooley*, 239 Or. App. 338,

344, 245 P.3d 155 (2010)); *Searle v. Exley Exp., Inc.*, 278 Or. 535, 540, 564 P.2d 1054 (1977)

("If goods are customarily bought by a substantial number of purchasers for personal, family or

household uses and were, in fact, bought by the plaintiff for his or someone else's use and not for

resale, the [UTPA] applies."). A transaction must satisfy both the objective and subjective

elements of the test to fall within the scope of the UTPA. *See Fowler*, 239 Or. App. at 344-45.

Plaintiff's claims fail at the first, objective prong of the *Searle* test because she does not

allege facts showing that LinkedIn Premium subscriptions are "customarily bought by a

substantial number of purchasers for personal, family or household uses." *Searle*, 278 Or. at

540; *Fowler,* 239 Or. App. at 344. To the contrary, the Complaint supports an inference that the

challenged subscriptions are primarily *commercial* in nature. Plaintiff alleges that the LinkedIn

platform is "mainly used for professional networking and allows . . . job seekers and employers"

to "post[] CVs and job openings." (Compl. ¶ 1 n.1.) Indeed, as their names suggest, "Premium

*Business*," "*Sales* Navigator Professional," and "*Recruiter* Lite" include services designed for

companies seeking to grow their business: "unlimited people searches," "access to different sales

tools, and the ability to make notes on user profiles," and "recruiter-focused tools," respectively.

Page 31  -  DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT

(*Id.* ¶ 4 n.2 (emphasis added).)[7]  In the FAQ section of the Offer Page, LinkedIn notes that

"[m]any employers find LinkedIn Premium so valuable that they'll pay for their employees'

memberships."  (Vakklaganti Dec., Ex. A.)  In fact, LinkedIn Premium is not limited to

individuals at all.  Premium subscribers include "employers" (*id.* ¶ 1 n.1), and LinkedIn

Premium "target[s] small- and medium-sized enterprises and professional organizations,

individual members and business groups in larger enterprises" (*id.* ¶ 16 n.11).[8]

    Although Plaintiff's description of LinkedIn as a "social media network" (Compl. ¶ 1)

may create a superficial sheen of consumer orientation, what matters is the purpose for which the

subscriptions are typically used.  *See Searle*, 278 Or. at 539 (while the purchase of "a sack of

potatoes" or "furniture for a home" would be subject to the UTPA, "the purchase of a carload of

potatoes" or "a Xerox machine," would be "[o]bviously excluded"); *Orluck v. Illinois Tool

Works,* No. 3:20-CV-01947-YY, 2021 WL 3473477, at *2 (D. Or. Aug. 6, 2021) (dismissing

UTPA claim where challenged products were marketed "for use in the auto body restoration and

collision repair industry" because it was "not clear that these products are customarily purchased

for personal, family, or household use," even though plaintiff alleged that he in fact used them on

---

[7] Plaintiff does not describe "LinkedIn Learning" other than to allege that (1) it is "included in all Premium subscriptions and, for the majority of the Class Period, was also offered as its own distinct subscription plan" and (2) is "an online MOOC service the company repackaged in September 2016." (Compl. ¶¶ 2, 17 n.4.)

[8] Plaintiff's conclusory allegations that the LinkedIn Premium Subscriptions "are goods as defined by ORS 646.605(6)(a), because they constitute products that may be obtained primarily for personal, family, or household uses" does not satisfy Federal Rule of Civil Procedure 8(a). (*See* Compl. ¶ 117.)  "[C]ourts need not accept as true legal conclusions"; only a complaint that contains "well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678-79).

his personal vehicle (citation omitted)).  Here, the allegations of the Complaint detailed above demonstrate that the purpose is commercial in nature.

Plaintiff also fails to satisfy the subjective element of the *Searle* test.  She does not allege that she purchased a LinkedIn Premium subscription for personal, rather than business, use.  *See Stoss v. J.P. Morgan Chase Bank, N.A.*, No. 3:13-CV-01068-AC, 2014 WL 585946, at *9 (D. Or. Feb. 14, 2014) (dismissing UTPA claim where property was allegedly purchased "as a vacation home or rental property" because plaintiff failed to allege sufficient facts for the court to infer the property was "primarily for personal use" (citation and emphasis omitted)); *Sawyer v. ReconTrust Co.*, No. CV-11-292-ST, 2011 WL 2619517, at *6 (D. Or. May 27, 2011) (where "the property at issue was not [plaintiff's] primary residence, but was a rental property," UTPA did not apply), *report and recommendation adopted*, No. 3:11-CV-292-ST, 2011 WL 2610223 (D. Or. June 30, 2011).

## VIII.  CONCLUSION

For all the foregoing reasons, LinkedIn respectfully requests that the Court dismiss Plaintiff's Complaint.

DATED:  October 7, 2022          STOEL RIVES LLP


_s/ Brad S. Daniels_
BRAD S. DANIELS, OSB No. 025178
brad.daniels@stoel.com
RACHEL C. LEE, OSB No. 102944
rachel.lee@stoel.com
SAMANTHA K. SONDAG, OSB No. 154244
samantha.sondag@stoel.com
Telephone:  503.224.3380

Attorneys for Defendant LinkedIn Corporation

Page 33  -   DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT