IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIE EASTERBROOK, on behalf of
herself and all others similarly situated,

        Plaintiff,

        v.

LINKEDIN CORPORATION,

        Defendant.

_____

Case No. 6:22-cv-01108-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Julie Easterbrook brings this action on behalf of herself and all others similarly situated against LinkedIn Corporation ("LinkedIn") for violating the Oregon Unlawful Trade Practices Act ("UTPA"). LinkedIn moves to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim upon which relief may be granted. For the following reasons, Defendant's Motion to Dismiss, ECF No. 17, is GRANTED.

## BACKGROUND

LinkedIn is a professional networking website that offers free features as well as paid premium memberships ("LinkedIn Premium"). FAC ¶ 2. Users interested in LinkedIn Premium can directly purchase a monthly or annual subscription or take advantage of LinkedIn's free trial period, which automatically converts to a paid subscription after one month. *Id.* ¶ 5; Vakklaganti

1 – OPINION AND ORDER

Decl. Ex. B, ECF No. 18-2.[1] To sign up for a free trial, users must choose between a monthly or annual billing cycle, select and input a payment method, and click a "Start your free trial" button. FAC ¶ 53; Vakklaganti Decl. Ex. B. After users complete an order on the checkout page, LinkedIn sends an email confirming their LinkedIn Premium subscription. FAC ¶ 67.

In January 2019, Plaintiff followed these steps to sign up for a one-month free trial of LinkedIn Premium. *Id.* ¶ 9. After enrolling in the free trial, Plaintiff received a confirmation email. *Id.* The email stated, "You'll pay 29.99 each month (plus tax) once your free trial ends . . . until you cancel," and specified the date on which the free trial ended. *Id.* ¶ 67. Despite this notice, Plaintiff claims that she was unaware that her one-month free trial would convert to a paid subscription. *Id.* ¶ 64.

Around February 25, 2019, LinkedIn automatically renewed Plaintiff's subscription and charged her $29.99. *Id.* ¶ 9. LinkedIn continued to automatically renew Plaintiff's subscription every month for the next two years, "with the most recent charge occurring on or around March 29, 2022." *Id.*

For the first year of her LinkedIn Premium membership, Plaintiff was unaware that LinkedIn was charging her every month. *Id.* It was not until January or February 2021, two years after she began her membership, that Plaintiff noticed the subscription charges. *Id.* Upon learning of the charges, Plaintiff attempted to cancel her LinkedIn Premium subscription. *Id.* Her first attempt was unsuccessful. *Id.* Around May 2021, Plaintiff attempted to cancel a second time,

---

[1] In general, a court may not consider material outside the pleadings in ruling on a motion to dismiss. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). However, a court may take judicial notice of material incorporated into a complaint to develop its understanding of facts and inferences contained within the body of the complaint that are drawn from those incorporated materials. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). LinkedIn requests that this Court take judicial notice of five copies of various LinkedIn webpages (ECF Nos. 18-1 to -5). Req. for Jud. Notice, ECF No. 19. Because Exhibits 1–5 are incorporated into Plaintiff's Complaint, LinkedIn's Request for Judicial Notice is well-taken.

which was also unsuccessful. *Id.* Finally, in late March or early April 2022, Plaintiff successfully canceled her LinkedIn Premium subscription. *Id.* Plaintiff filed this action on July 29, 2022.

Plaintiff alleges that LinkedIn "fails to provide the requisite disclosures and authorizations required to be made to and obtained from Oregon consumers" under Oregon's Automatic Renewal Law ("ARL"), Or. Rev. Stat. § 646A.295, and Oregon's Free Offer Law ("FOL"), Or. Rev. Stat. § 646.644, both of which constitute violations of the Oregon Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.608(1)(sss)–(ttt). FAC ¶ 1. Plaintiff also brings an unjust enrichment claim on the basis that LinkedIn "has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class's [LinkedIn Premium] purchases." *Id.* ¶ 159. LinkedIn moves to dismiss. Def.'s Mot. 1, ECF No. 17.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000), but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If a complaint is dismissed, the court must grant the plaintiff leave to amend unless it "determines

that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

### I. UTPA Claims

LinkedIn argues that Plaintiff's claims are barred by the UTPA statute of limitations. Def.'s Mot. 25. UTPA actions by private parties "must be commenced within one year after the discovery of the unlawful method, act or practice." Or. Rev. Stat. § 646.638(6). "The UTPA statute of limitations begins to run when the plaintiff knows or should have known of the allegedly unlawful conduct." *Morris v. Dental Care Today, P.C.*, 473 P.3d 1137, 1139 (Or. Ct. App. 2020) (citing *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 33 (Or. 2015)). The ARL and FOL require a person making an automatic renewal offer or free offer to provide the consumer with clear and conspicuous information about the offer terms, obtain the consumer's affirmative consent, and provide an easy-to-use mechanism for cancellation. Or. Rev. Stat. §§ 646A.295(1)–(2), 646.644(2), (4)–(5). Here, LinkedIn's "allegedly unlawful conduct" is its failure to make these disclosures and provide an adequate method for cancellation.

Courts use a two-step analysis to determine whether a plaintiff knows or should have known of the allegedly unlawful conduct. *Mathies v. Hoeck*, 588 P.2d 1, 3 (Or. 1978). "First, it must appear that plaintiff had sufficient knowledge to 'excite attention and put a party upon his guard or call for an inquiry[.]'" *Id.* (internal citations omitted). Second, "it must also appear that 'a reasonably diligent inquiry would disclose' the fraud." *Id.* (internal citations omitted). "Whether or not the plaintiff should have known of the fraud at a particular point in time is normally a question for the jury except where only one conclusion can reasonably be drawn from the evidence." *Id.*

The two-step analysis reveals that Plaintiff knew or should have known of LinkedIn's allegedly unlawful conduct over a year before filing her Complaint. First, Plaintiff had sufficient knowledge to excite her attention when she signed up for LinkedIn Premium in early 2019. FAC ¶ 9. Viewing the LinkedIn Premium checkout page—which included the offer terms; a notice that by placing an order, a subscriber agrees to LinkedIn's terms of service; and a hyperlink to the cancellation page—was sufficient to excite Plaintiff's attention. FAC ¶ 53; Vakklaganti Decl. Ex. B, D; *see MacQuaid v. New York Times Co.*, No. 3:22-CV-00955-MO, 2023 WL 2633359, at *1 (D. Or. Mar. 24, 2023). Even if the checkout page disclosures did not excite Plaintiff's attention, her discovery of the charges and attempt to cancel in early 2021 were sufficient to put her on guard. FAC ¶ 84. Plaintiff's allegations that the charges "came as a surprise" and caused her "confusion" demonstrate that she had sufficient knowledge to call for an inquiry into LinkedIn's alleged failure to make the requisite disclosures and obtain her affirmative consent before charging her. *Id.* ¶¶ 84, 86. Further, Plaintiff's unsuccessful attempt to cancel after learning of the charges demonstrates that she had sufficient knowledge to call for an inquiry into LinkedIn's mechanism for cancellation. *Id.* ¶ 9. Even assuming, however, that Plaintiff believed her first cancellation attempt was successful, her subsequent attempt to cancel demonstrates that, at the very latest, she had sufficient knowledge to excite her attention in May 2021. *Id.* ¶ 9.

The second step asks whether a reasonably diligent inquiry would reveal the fraud. A plaintiff must take some steps to discover the allegedly unlawful conduct. *See, e.g.*, *Bell v. Benjamin*, 222 P.3d 741, 744 (Or. Ct. App. 2009) (holding that the plaintiff could reasonably have looked through public records or his credit report or contacted the title company to reveal that "lien amounts had been reduced in connection with the sale of his home"); *Kinyon v. Cardon*, 686 P.2d 1048, 1051–52 (Or. Ct. App. 1984) (holding that the plaintiff could reasonably

have talked to tenants of the mobile home park he purchased to reveal that the seller misrepresented a drainage problem in the purchase agreement). Accordingly, Plaintiff could have read the information on the checkout page, including the "Frequently asked questions," to reveal that LinkedIn planned to charge her "without first providing and obtaining the requisite disclosures and authorizations required" under Oregon law. FAC ¶ 81; Vakklaganti Decl. Ex. B. In fact, Plaintiff's inquiry *did* reveal the alleged fraud when she reviewed her monthly billing statement in early 2021 and noticed the charges from LinkedIn. FAC ¶ 9. Since Plaintiff did not file her Complaint until July 29, 2022, her UTPA claims are time-barred. Pl.'s Compl., ECF No. 1.

Plaintiff relies on *Russell v. Ray Klein, Inc.*, No. 1:19-CV-00001-MC, 2021 WL 1895238, at *2 (D. Or. May 10, 2021), to support her assertion that the UTPA statute of limitations did not start running until Plaintiff knew that LinkedIn's conduct was unlawful. Pl.'s Response 30, ECF No. 24. However, the facts here are distinguishable from *Russell*.

In *Russell*, the Court considered whether the plaintiff should have reasonably discovered an allegedly unlawful issuance fee on a garnishment. *Russell*, 2021 WL 1895238, at *2–3. In that case, the disputed fee was "one charge on a list of charges totaling the otherwise legitimate garnishment." *Id.* at *3. The Court reasoned that it was unclear "whether Plaintiff, on his own, could have discovered that the issuance fee was an unlawful collection method." *Id.* at *2. Since the plaintiff "sufficiently alleged that he could not reasonably discover that the issuance fee was unlawful until he was contacted by counsel," the Court did not dismiss the claim. *Id.* at *2–3.

Here, however, Plaintiff's own allegations demonstrate that her discovery of the charges in early 2021 grabbed her attention enough for her to attempt to cancel her subscription. FAC ¶ 9. As the Court in *Russell* emphasizes, "the discovery rule is an objective standard of what a

reasonable person would do in a similar situation." *Russell*, 2021 WL 1895238, at *3. Just as it is reasonable for an employee to cash a paycheck without examining every deduction, it was reasonable for the plaintiff in *Russell* to receive the garnishment without triggering his attention "enough to engage in a diligent inquiry." *Id.* In contrast, a reasonable person who believed they never signed up for a paid subscription but later discovered they had been charged every month for a year—despite several unsuccessful cancellation attempts—would know something fraudulent had occurred.

Finally, Plaintiff claims that "each recurring charge [she] incurred gives rise to an independently actionable claim under the UTPA." FAC ¶ 98. However, Plaintiff presents no legal authority to support this argument. Such an approach would run contrary the statute's explicit emphasis on "discovery" of the unlawful conduct, as opposed to an ongoing financial harm.

In sum, because Plaintiff knew or should have known of LinkedIn's allegedly unlawful conduct over one year before she filed her Complaint, her UTPA claims are time-barred.

## II. Unjust Enrichment Claim

Plaintiff also argues that LinkedIn "has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Nationwide Class's purchases of [LinkedIn Premium] Subscriptions." *Id.* ¶ 159. Plaintiff brings this unjust enrichment claim based on LinkedIn's "failure to disclose material terms of the purchase agreement," which "induced Plaintiff and the Nationwide Class to purchase [LinkedIn Premium] Subscriptions." *Id.* However, it is unclear whether the "material terms" to which Plaintiff refers are those as defined in the ARL and FOL, or different terms entirely.

If this claim is based on the same disclosures required under the ARL and FOL, Plaintiff faces several hurdles. First, in Oregon, "there is a rebuttable presumption that the elements of laches have been sufficiently proven" when the analogous statute of limitations has run. *Fontana v. Steenson*, 929 P.2d 336, 338 (Or. Ct. App. 1996). To the extent that Plaintiff's unjust enrichment claim is based on the same conduct as her ARL and FOL claims, the one-year UTPA statute of limitations presumptively applies. Second, equitable relief is unavailable if there is a "practical, efficient, and adequate" remedy at law. *Alsea Veneer, Inc. v. State*, 862 P.2d 95, 100 (Or. 1993). Here, Plaintiff would have to demonstrate that relief under the UTPA, which provides for "actual damages or statutory damages of $200, whichever is greater," is an impractical, inefficient, or inadequate remedy for her unjust enrichment claim. Or. Rev. Stat. § 646.638(1). Third, as Defendant notes, Plaintiff may face challenges if her unjust enrichment claim merely duplicates her UTPA claims. Def.'s Mot. 33. Fourth, "[u]nder Oregon law, once a court determines that a valid contract exists, an unjust enrichment claim must fail." *Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669 (9th Cir. 2017).

To the extent that Plaintiff has separate grounds for her unjust enrichment claim, she has not adequately pled them in her Complaint. And regardless of the basis of her unjust enrichment claim, Plaintiff fails to allege whether she actually used LinkedIn Premium while she was paying for the service. If Plaintiff used the service, it is not "unjust" for LinkedIn to keep the revenue from her subscription.

Though Plaintiff may be able to cure these deficiencies in an amended complaint, the Court is concerned that her unjust enrichment claim is not suitable for class certification. This claim requires factual inquiries for each potential class member, including whether subscribers

knew they were signing up for a paid membership and whether they actually used the service. This issue, however, is predicated on whether Plaintiff can first cure her pleading deficiencies.

## CONCLUSION

LinkedIn's Motion to Dismiss, ECF No. 17, is GRANTED. Plaintiff's UTPA claims are DISMISSED with prejudice. Plaintiff's unjust enrichment claim is DISMISSED without prejudice. Plaintiff is granted thirty days to file an amended complaint.

IT IS SO ORDERED.

DATED this 20th day of April, 2023.

/s/ Michael McShane
Michael McShane
United States District Judge